UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHELE BORTON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-2209 |
| | § | |
| LOWE'S HOME CENTERS, LLC, | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is a motion for summary judgment filed by defendant Lowe's Home Centers, LLC ("Lowe's"). Dkt. 24. Plaintiff Michele Borton responded. Dkt. 26. Lowe's replied. Dkt. 28. Having considered the motion, response, reply, record evidence, and applicable law, the court is of the opinion that the motion should be DENIED.

### I. BACKGROUND

Borton began working for Lowe's in October 1997. Dkt. 1 ¶ 9. During her entire tenure with Lowe's, Borton received positive annual performance evaluations and was never disciplined. *Id*. She became a Location Manager of Lowe's new Central Delivery Terminal in Houston, Texas ("Delivery Center"), on February 20, 2016. *Id.* ¶ 10.

In February 2017, Borton received a positive review from her supervisors, Lindsey Kroeger and Michael McCurry. Dkt. 26-4. In late February 2017, shortly after the review, Brian McIntosh, the Director of Delivery, Equipment, and Supplies, became Borton's supervisor. Dkts 1 ¶ 12, 26 at 18.

In late March or early April 2017, Borton learned that she needed a foot surgery, and on April 17, 2017, she informed McIntosh that she scheduled a foot surgery on June 1, 2017, and that it would

take one to four weeks for her to return to work. *Id.* ¶¶ 14-16; Dkt. 24 at 10. Borton also informed J.D. Densmore, an Emergency Command Center Manager at Lowe's who supported the Location Manager of the Central Delivery Terminals, about her leave. Dkt. 1 ¶ 16. In mid-May 2017, Borton rescheduled her surgery to June 15, 2017 because McIntosh allegedly asked Borton to attend a meeting on June 6, 2017. Dkt. 1 ¶ 17. On June 6, 2017, McIntosh told Borton that Lowe's terminated her employment for "lack of leadership." *Id.* ¶ 20.

Lowe's asserts that the lack of leadership investigation began on April 5, 2017, twelve days before Borton requested her medical leave, when Borton sent an email to McIntosh about her difficulty working with an HR manager. Dkts. 24 at 11, 24-2 at 13. Additionally, on April 20, 2017, an HR director forwarded McIntosh and Machell Mims, the Supply Chair HR director, an email with a complaint about Borton from one of her subordinates. Dkt. 25-8. Finally, on May 10, 2017, Mims and Densmore visited the Delivery Center where they found mismanagement, safety, cleaning, low morale and other related issues. Dkts. 24-5 at 4, 24-13, 24-5 at 7, 11. They reported these findings to McIntosh, who had originally planned to join but had to cancel for medical reasons. Dkts. 24-2 at 16, 24-5 at 11.

Borton filed this suit against Lowe's for violation of the anti-interference and anti-retaliation provisions of the Family and Medical Leave Act ("FMLA"). Dkt. 1 ¶ 1; *see* 29 U.S.C. § 2601 *et seq*.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

### III. ANALYSIS

The FMLA entitles an eligible employee to reasonable leave because of a serious health condition. 29 U.S.C. § 2612(a)(1)(E). Additionally, the act prohibits employers from discharging or otherwise discriminating against an individual for opposing any practice made unlawful by the act. *Id.* § 2615(a)(2). Further, employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the act. *Id.* § 2615(a)(1).

**A. Retaliation Claim**.

To prove FMLA retaliation, the employee must demonstrate: "1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (quoting *Mauder v. Metro Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006)). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to show the plaintiff would have been terminated during the FMLA leave period and is thus not entitled to restoration of his or her position. *Id.* The burden then shifts back to the plaintiff to show pretext. *Id.*[1]

---

[1] The Supreme Court held that to establish the "causal link" requirement of a Title VII retaliation claim, a plaintiff must provide substantial evidence that she would not have been terminated "but for" exercising protected rights. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362, 133 S. Ct. 2517 (2013). Neither the Fifth Circuit, nor the Supreme Court, has decided

3

**1. Borton's prima facie case**

The court will first consider whether Borton can meet her prima facie burden. The third prong is the only prong in dispute. Borton must present evidence creating an issue of material fact that she was either treated less favorably than an employee who had not requested leave under the FMLA or that the adverse decision was made because she sought protection under the FMLA. In order to succeed in this argument, Borton must show:

> [T]he employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions.

*See Lee v. Ky. City. S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (internal citations omitted).

Borton contends that she was treated less favorably than an employee in a nearly identical situation because Lowe's issued a Performance Improvement Plan ("PIP") for two other Location Managers who had "leadership (and other) problems," whereas she was fired without first receiving a PIP. Dkt. 26 at 26–27. Lowe's argues that none of the Location Managers had performance issues or complaints similar to Borton's. Dkts. 24 at 23–24, 28 at 7. The only similarity between Borton and the other Location Managers is that they occupied the same job and had "leadership (and other) problems." Dkt. 26 at 20–21. Borton has not shown that the two Location Managers that received PIPs have comparable violation histories or complaints. While Borton was fired because of lack of leadership, low morale of employees, and health and safety concerns of the facility, the two Location Managers that received PIPS were placed on PIPs due to employee behavior in the facility or issues arising from the use of a third-party delivery system. Dkts, 24-2 at 31, 34. Thus, the court finds

---

whether this "but for" causation standard applies to FMLA retaliation claims. *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 706 (5th Cir. 2016).

there is not enough evidence of similarity in the record to create an issue of material fact that Borton was treated less favorably.

Even if Borton fails to show that Lowe's treated her less favorably than an employee in a nearly identical situation, Borton could establish the third prong by showing she was terminated because she requested FMLA leave. Borton asserts that Lowe's decided to terminate her within one month of her request, and the timing was close enough to establish a causal link. Dkt. 26 at 27.

When evaluating the "causal link", the plaintiff's burden is light—she merely has to show that the protected activity and the adverse employment action are not "completely unrelated." *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006). The court considers the "temporal proximity" between the FMLA leave and the adverse action. *Id.* It is necessary that the employer was aware of the employee's protected activity. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003).

Here, Borton emailed McIntosh about her need for FMLA leave on April 17, 2017, and Lowe's made the decision to fire Borton on May 15 or 16, 2017, within one month of Borton's FMLA request. Dkt 26-2 at 19, 26-10. Thus, the inference arising from temporal proximity is strong. Further, there is evidence that the decisionmaker, McIntosh, was aware of Borton's FMLA leave. Dkt. 26-10. It is irrelevant that Mims, who documented and conducted the May 10 visit that occurred before Borton's termination, did not know about Borton's FMLA leave or that McIntosh, the decisionmaker, did not join the May 10 visit.[2] Dkt. 24 at 26. Additionally, Densmore, who visited with Mims, knew about Borton's leave. Dkt. 1 ¶ 16. Considering the evidence in the light

---

[2]As described in the Background section of this order, on May 10, 2017, Mims and Densmore visited the Delivery Center. After Mims and Densmore reported to McIntosh about this visit, McIntosh decided to fire Borton. *Id.* at 10–12.

most favorable to Borton, the court finds that there is a genuine issue of material fact as to the third prong of the prima facie case.

**2. Legitimate Non-Discriminatory Reason and Pretext**

Moving on to the next stage, Lowe's has presented sufficient evidence that it had a legitimate, nondiscriminatory reason for terminating Borton's employment—because she lacked leadership that had caused low employee morale and created an intolerable working environment. *See* Dkt. 24. Thus, the burden shifts back to Borton to create a genuine issue of material fact that the proferred reason is a pretext.[3]

Borton has provided evidence that she received several positive performance reviews at the end of January 2017, and that Borton's subordinates believed she was a good manager. Dkts. 26-4 at 17, 26-28, 26-29, 26-30. Borton also provided evidence that she had never been told by McIntosh or anyone else that her leadership was lacking. Dkt. 26-1 at 36. A reasonable trier of fact could determine that Lowe's reason for terminating Borton was a pretext. Further, there is a genuine issue of material fact concerning whether Lowe's started to "dig[] up old, stale, employee complaints" to use against Borton two days after she requested FMLA leave and whether or not McIntosh discussed how Borton's position would be covered while she was on FMLA leave. *See* Dkts. 26-11, 26-12, 26-13, 26 at 32, 28 at 6. All of these facts could lead a reasonable trier of fact to conclude that

---

[3]Borton does not invoke the mixed-motive framework. In *Richardson*, the Fifth Circuit stated that the mixed-motive framework applies only in cases where an employee "concedes that discrimination was not the *sole* reason for her [or his] discharge, but argues that discrimination was a motivating factor in her [or his] termination." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). Here, Borton has not conceded that discrimination was not the sole reason for her discharge. As such, the burden does not shift back to prove that the employer's legitimate nondiscriminatory reason is one of the reasons for termination and discrimination is another reason.

Lowe's proferred reason was pretext and that the reason Borton was fired was because of the requested FMLA leave.

In summary, there is a genuine issue of material fact surrounding Borton's retaliation claim. Therefore, the motion for summary judgment for the retaliation claim is DENIED.

**B. Interference Claim**

To establish a prima facie case of interference claim, a plaintiff must demonstrate: (1) she was an eligible employee; (2) her employer was subject to FMLA requirements; (3) she was entitled to leave under the FMLA; (4) she gave proper notice of her intention to take FMLA leave; and (5) the employer denied her the benefits to which she was entitled under the FMLA. *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). As with Borton's previous claim, once the plaintiff establishes a prima facie case, the employer must provide a legitimate, non-discriminatory reason for the employment action. *Id.* Then, in order to prevail, "the plaintiff must raise an issue of material fact that the employer's proffered reason was pretextual." *Id.*

Here, Borton contends that she was denied her FMLA benefits because she was fired nine days before her rescheduled leave. Dkt. 26 at 25. Lowe's argues that Borton's FMLA was approved and terminating an employee for a legal, non-retaliatory reason does not transform into a denial of FMLA benefits. Dkt. 24 at 28–29. However, as discussed in the retaliation section, there is a genuine issue of material fact that Lowe's non-retaliatory reason was pretextual. Lowe's fails to provide any additional evidence or argument for this issue. Dkt. 24 at 25. Therefore, the motion for summary judgment for the interference claim is DENIED.

## IV. CONCLUSION

There is a genuine issue of material fact as to both of Borton's claim. Lowe's motion for summary judgment is DENIED.

Signed at Houston, Texas on December 20, 2018.

_____
Gray H. Miller
Senior United States District Judge